RILEY A. CLAYTON
Nevada Bar No. 005260

**HALL JAFFE & CLAYTON, LLP**
7455 W. WASHINGTON AVENUE
SUITE 460
LAS VEGAS, NEVADA 89128
(702) 316-4111
FAX (702)316-4114

Attorney for Defendant,
State Farm Mutual Automobile Insurance
Company

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOYCE ISSAQ, individually,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, JOHN DOES I through X, inclusive, and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | CASE NO.: 2:10-cv-01599-RLH-PAL<br><br>**STIPULATION AND ORDER FOR DISMISSAL AND AGREEMENT FOR PRIVATE BINDING ARBITRATION** |

      This Stipulation and Order of Dismissal and Agreement for Private and Binding Arbitration (hereinafter "Agreement") is entered into by Plaintiff, Joyce Isaaq ("Plaintiff"), and Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), (collectively referred to as the "Parties"), as an alternative method of resolving a dispute that has allegedly arisen from an April 20, 2006, automobile accident and subsequent claims handling, which culminated in a lawsuit styled *Joyce Isaaq v. State Farm Mutual Automobile Insurance Company, et al*, currently pending in the United States District Court, District of Nevada, Case No. 2:10-cv-01599-RLH-PAL. Plaintiff is represented by Layne F. Barney, Esq. State Farm is represented by Hall Jaffe & Clayton, LLP. The following terms and conditions of this Agreement will become effective upon the signature by the Parties and the execution and filing of the same by this Court.

      1.     State Farm issued a policy of automobile insurance, Policy No. 2644-838-28C, which

provides, among other coverages, uninsured motorist ("UIM") coverage, subject to all terms, conditions, limitations of the policy and any applicable offsets.

2. In an effort to resolve all disputes and controversies between the Parties arising out of and relating to the subject automobile accident and subsequent claims handling, the Parties have agreed to place this matter into private binding arbitration, with all damages capped against State Farm at $92,500, in "new" UIM money, which is the amount remaining under the policy's UIM "each person" limit.

3. For and in consideration of the mutual covenants and promises made herein, the Parties enter into this Agreement and agree to be bound by its terms as fully stated herein.

4. The Parties agree that the arbitration shall be binding and shall be the sole and final resolution and adjudication of Plaintiff's claims against State Farm, which in any way arise out of or relate to the April 20, 2006, accident, and any claims handling or claims decision making related thereto. This clause and mutual promise is of the essence to this Agreement. The arbitrator's decision and award shall be the sole basis for recovery on these claims and shall be final and binding. The Parties agree that there shall be no right of appeal of the arbitrator's decision to any trial court, court of appeals, the Nevada Supreme Court, or to any other court, forum, person or entity, or the arbitrator himself. Likewise, the Parties agree that there shall be no right to submit a Motion for Reconsideration or similar or equivalent motion or request to the arbitrator.

5. The arbitrator shall *not* be informed concerning the "range of award" (discussed below) that the Parties have agreed upon. The arbitrator will *only* be asked to resolve the issue of Plaintiff's legal entitlement, if any, to additional UIM proceeds, subject to all terms, conditions, and offsets under the policy and Nevada law. In other words, the arbitrator shall determine fault for the accident (and apportion it appropriately if necessary), and the extent of Plaintiff's damages by placing a fair and equitable total value (which includes medical specials, income loss, other special damages, and general damages) on the Plaintiff's claim. The arbitrator will not be asked to and will not consider any alleged claims handling/decision-making issues or liability for extra-contractual claims, including , but not limited to, breach of the implied covenant of good faith and fair dealing, statutory claims handling violations, or liability for punitive or other extra-contractual damages, as such extra-contractual claims

2

and damages have been and are expressly waived by Plaintiff and dismissed with prejudice by this Agreement.

6. The Parties will jointly select a single arbitrator to serve as the arbitrator of this case. The arbitrator will be _____.

7. Plaintiff, through this Agreement, agrees to dismiss her present lawsuit with prejudice that is currently on file in the United States District Court, District of Nevada.

8. The Parties shall advise the arbitrator of an agreement for binding arbitration and proceed in a manner that is agreeable to the Parties and to the arbitrator. The Parties shall be allowed to conduct any reasonable discovery permitted under the Nevada Rules of Civil Procedure. The arbitrator shall resolve any and all discovery disputes, including the scope of permitted discovery. Subpoenas can be issued and enforced pursuant to NRS 38.233. Arbitration briefs and exhibits are to be submitted in accordance with the instructions and desires of the arbitrator.

9. The arbitration hearing will be held at a mutually agreed upon date.

10. The arbitrator shall be given discretion to conduct the arbitration hearing in an informal and expeditious manner allowing for such testimony or evidence as is needed to reach a decision. The parties may submit and the arbitrator may consider written expert reports consistent with the format requirements of Nev. R. Civ. P. 26(a)(2) in lieu of live expert testimony.

11. Regarding the Plaintiff's contractual UIM claim against State Farm, the "range of award" herein shall be set at $0.00 "low" and capped at a $92,500.00 "high." The "high" derives from the potential payment of the remainder of the UIM policy limit. State Farm, however, will be entitled to all offsets for amounts previously received by Plaintiff before it may become obligated to pay any "new" UIM money, i.e., the $15,000 already paid to Plaintiff by the tortfeasor; plus the $3,305.37 in medical payments coverage already paid to Plaintiff by State Farm; plus the $7,500 initial payment[1] made under

---

[1] State Farm and Plaintiff reached an impasse in its settlement negotiations and, as a result, State Farm has agreed to pay Plaintiff $7,500 in UIM proceeds, which is the amount of its initial offer to Plaintiff to resolve her UIM claim. Plaintiff may keep this amount irrespective of the outcome of the arbitration. The parties are presently trying to determine whether Medicare is entitled to any portion of this payment based upon a potential Medicare lien. Once the potential lien issue has been resolved in writing by Medicare, and Medicare has confirmed in writing that no amount is owed to it, State Farm will issue a check in the amount of $7,500 directly to Plaintiff and her attorney. If Medicare is still asserting a lien, then the check

the UIM policy, for a total offset of $25,805.37.

12. The only manner in which State Farm would be obligated to pay any "new" UIM money is if the arbitrator concludes that the total value of Plaintiff's claim exceeds $25,805.37. By way of example, if the arbitrator were to conclude that the total value of Plaintiff's claim was only $20,000, then State Farm would not be required to pay any "new" UIM money. By way of a second example, if the arbitrator were to conclude that the total value of Plaintiff's claim was $40,000, then State Farm would be obligated to pay $14,194.63 in "new" UM money.

13. **The maximum that State Farm would ever be required to pay Plaintiff under this Agreement is the remaining $92,500.00 available under the UIM policy.** By way of example, if the arbitrator were to conclude that the total value of Plaintiff's claim was $200,000, then State Farm would only be obligated to pay Plaintiff the "high" of the range of award, which is $92,500 in "new" UIM money. State Farm would **not be required** to pay any amount that exceeds $92,500 in "new" UIM money, and in such a circumstance, the excess award beyond the applicable offsets, and the award would be automatically reduced to the $92,500 "high."

14. The arbitrator shall not be permitted to make an award of attorney fees, legal costs, or interest to any party. An Offer of Judgment will have no effect.

15. Payments of the sum awarded, as limited by the parameters set forth herein, shall be made no later than 20 days after service of the arbitrator's decision.

16. The Parties agree to equally share and pay for the arbitrator's fees and costs.

17. This Agreement is binding on the Parties, their heirs, executors, administrators, personal representatives, legal representatives, and other such persons or entities.

///
///
///

---

will be drafted in such a manner so to ensure that Medicare's interests are protected. However, irrespective of who is ultimately entitled to the $7,500 UIM payment, the parties recognize that such a payment shall reduce the amount available under the UIM policy accordingly, and allow the "high" range of any arbitration award to be capped at $92,500.

18. The terms and conditions of this agreement may be modified upon the written and mutual agreement of the parties.

Dated this 22 of October, 2010.

HALL JAFFE & CLAYTON, LLP

By _____
RILEY A. CLAYTON
Nevada Bar No. 005260
7455 West Washington Ave., Suite 460
Las Vegas, Nevada 89128
Attorney for Defendant

Dated this 19TH of OCTOBER, 2010.

THE LAW OFFICES OF LAYNE F. BARNEY

By _____
LAYNE F. BARNEY
Nevada Bar No. 006563
3440 W. Cheyenne Ave., Suite 500
North Las Vegas, Nevada 89032
Attorney for Plaintiff

## ORDER

**IT IS SO ORDERED**

Dated: October 26, 2010

_____
CHIEF UNITED STATES DISTRICT JUDGE

5